**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PLASTOFORM INDUSTRIES LTD.**, <br> Plaintiff, <br> vs. <br> **MONSTER LLC, ET AL.**, <br> Defendants. | CASE NO. 18-cv-02805-YGR <br><br> **ORDER RE: PENDING MOTIONS** <br> Re: Dkt. Nos. 20, 23, 27, 37, 39 |

Pending before the Court are the following motions:

- Plaintiff's Motion for a Right to Attach Order and Issuance of Writ of Attachment (Dkt. No. 20 ("Attachment Motion"));

- Plaintiff's Administrative Motion to File Documents Under Seal (Dkt. No. 23 ("Sealing Motion"));

- Defendants Monster, LLC's and Monster, Inc.'s (together, "Monster") Motion to Compel Arbitration and Administrative Motion Seeking a Continuance (Dkt. No. 27 ("Motion to Compel Arbitration"));

- Sichenzia Ross Ference Kesner LLP's ("SRFK") Motion to Withdraw as Counsel of Record for Defendants (Dkt. No. 37 ("Withdrawal Motion")); and

- SRFK's Administrative Motion Seeking a Continuance of the September 11, 2018 Hearing on the Attachment Motion and Motion to Compel Arbitration (Dkt. No. 39 ("Motion for Continuance").

Having carefully considered the papers submitted and the arguments of the parties, and for the reasons set forth below, the Court hereby **GRANTS** Monster's Motion to Compel Arbitration; **DENIES WITHOUT PREJUDICE** plaintiff's Attachment Motion; **TENTATIVELY DENIES** plaintiff's Sealing Motion; **GRANTS** SRFK's Withdrawal Motion; and **DENIES AS MOOT** SRFK's Motion for Continuance.

\\

## I. FACTUAL BACKGROUND

In 2010, plaintiff and Monster entered into a Manufacturing and Supply Agreement. (Declaration of Wan Man "Raymond" Liu ISO Plaintiff's Attachment Motion ("Liu Decl.") ¶ 4, Dkt. No. 34; Manufacturing and Supply Agreement ("Supply Agreement"), Dkt. No. 23-3.) Under the Supply Agreement, plaintiff would supply products ordered by Monster. (Supply Agreement at 1, Dkt. No. 23-3.)

As part of its routine business practices, Monster would issue purchase orders ("POs") to plaintiff. (Liu Decl. ¶ 5.) After receipt of the POs, plaintiff would issue a corresponding invoice along with the delivery of the goods to Monster. (*Id.*)

To date, the invoices total $1,213,105.88 in outstanding amounts due to plaintiff. (*Id.* ¶ 7.) On March 12, 2018, plaintiff reminded Monster of its overdue payments and demanded payment within the next 15 days. (*Id.* ¶ 10.) It made a subsequent written demand for payment on March 21, 2018, but Monster has failed to pay any of the outstanding balance. (*Id.* ¶¶ 12, 13.)

## II. MONSTER'S MOTION TO COMPEL ARBITRATION

### A. Contractual Provisions

Monster seeks to compel plaintiff to submit the underlying dispute to arbitration and a stay of the case during the pendency of such arbitration proceeding.[1] The provision of the Supply Agreement on which Monster relies (herein, the "Arbitration Provision") provides as follows:

> 16.2 **Binding Arbitration.** Except as provided in Clause 16.5 (Equitable Relief), any Dispute will be settled exclusively and finally by binding arbitration in San Francisco, California, USA using JAMS/ENDISPUTE and a single arbitrator. Proceedings will be conducted in the English language and result in a written statement of the facts and legal reasoning supporting the decision of the arbitrator at the request of either party.

---

[1] Monster concurrently seeks leave to file an Amended Answer for the sole purpose of adding an affirmative defense concerning the Arbitration Provision in the Supply Agreement. Because plaintiff has not described any prejudice that it would suffer if Monster is granted leave to amend its Answer, or made a "strong showing" as to any of the remaining factors that courts consider in determining whether to grant leave to amend, Monster's request is **GRANTED**. Counsel shall refile the proposed Amended Answer (Dkt. No. 27-4) forthwith. *See infra* Section V; *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013).

Judgment on the award of the arbitrator may be entered by any court having jurisdiction to do so.

"Dispute" in turn is defined as "any dispute arising out of or relating to [the Supply Agreement]" (Supply Agreement ¶ 16.1), and "Clause 16.5" provides: "16.5 **Equitable Relief.** Either party may seek equitable relief, including preliminary or permanent injunctive relief in any court of competent jurisdiction."

Relying on Uniform Commercial Code ("UCC") section 2-207, plaintiff responds that the Supply Agreement is superseded by the terms of the POs, the terms of which control this dispute. Alternatively, plaintiff argues that the terms of Monster's POs constitute modifications to the Supply Agreement. The terms of the POs on which plaintiff relies provide in relevant part:

> These Purchase Conditions ("Conditions") govern every purchase of goods and services ("Products") by Monster, Inc. and Monster, LLC ("Monster"). Monster does not accept, expressly or impliedly, and Monster hereby rejects, any additional or conflicting terms or conditions, except as expressly agreed by Monster in writing. By proposing and delivering any products or services to Monster after receipt of these Conditions or a notice that purchases are subject to these Conditions, the supplier ("Supplier") agrees to be legally bound by these Conditions.
>
> IF YOU DO NOT AGREE, NOTIFY MONSTER IMMEDIATELY AND DO NOT GO FORWARD WITH THE TRANSACTION.
>
> . . .
>
> Governing Law; Disputes: These Conditions and any disputes arising out of or in connection with these Conditions ("Disputes") shall be governed by California law without regard to conflict of law principles. All Disputes are subject to the exclusive jurisdiction of courts in California, with the sole exception that (1) Supplier may also be sued for payments at its places of business and any shipment destination and (2) each party may obtain injunctive relief from any court of competent jurisdiction worldwide. The prevailing party in any Disputes shall be entitled to reimbursement of all legal fees including reasonable attorneys fees from the other party.

(*See, e.g.*, Dkt. No. 23-4 ("POs") at ECF pp. 1, 3.)

Monster challenges plaintiff's reliance on these Conditions of Purchase, noting that Paragraph 4.3 of the Supply Agreement provides:

\\

\\

3

> 4.3 **Applicable Terms.** Purchase orders shall be subject only to the terms and conditions of this Agreement and the terms that Monster expressly states in the purchase order. No additional, different or any other terms contained or referenced in Supplier's order acknowledgment or otherwise presented to Monster shall apply, unless and until expressly agreed to by Monster in writing. Monster's standard "Conditions of Purchase" shall also not apply, even if they are incorporated in or attached to Monster's purchase orders.

### B. Legal Standard

The Federal Arbitration Act ("FAA") allows a party to request that a district court compel arbitration and stay judicial proceedings. 9 U.S.C. §§ 3, 4. When deciding whether a dispute is arbitrable under federal law, a court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In determining whether parties have agreed to arbitrate a dispute, courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *See Chiron Corp.*, 207 F.3d at 1130. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

However, the FAA's savings clause "allows courts to refuse to enforce arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of a contract.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (quoting 9 U.S.C. § 2). "The clause 'permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

4

**C. Analysis**

*1. Agreement to Arbitrate*

With respect to the first factor, the parties agree that the Supply Agreement, which contains the Arbitration Provision, is a valid agreement between the parties. However, as previously mentioned, plaintiff argues that while the Supply Agreement "may have governed the relationship between the parties at one point," it was supplanted by the terms of the POs. (Opposition to Monster's Motion for Order Compelling Arbitration ("Opp. to Motion to Compel Arbitration") at 5, Dkt. No. 35.)[2] Plaintiff does not persuade. Paragraph 4.3 of the Supply Agreement specifically contemplates the forthcoming POs and states, in relevant part:

> 4.3 **Applicable Terms.** Purchase orders shall be subject only to the terms and conditions of this Agreement and the terms that Monster expressly states in the purchase order. . . . *Monster's standard "Conditions of Purchase" shall also not apply, even if they are incorporated in or attached to Monster's purchase orders.*

(emphasis supplied.)

Plaintiff ignores this contractual language, instead arguing that the POs contain new and different terms pursuant to UCC section 2-207(3) (Cal. Com. Code section 2207(3))[3] and thus "by tendering the goods as specified by the Monster Defendants' POs, Plaintiff has accepted the terms contained in that PO, and thus a binding contract is formed." (Opp. to Motion to Compel Arbitration at 4.)

The two cases plaintiff cites for the proposition that "California law specifically applies [UCC] section 2-207 in disputes concerning purchase orders" are inapposite. (*Id*.) *Diamond Fruit*

---

[2] In connection with its opposition to Monster's Motion to Compel Arbitration, plaintiff requests that the Court take judicial notice of the Supply Agreement, Monster's POs to plaintiff, and plaintiff's invoices to Monster previously submitted. (Dkt. No. 35-1.) The Court views the request as one to incorporate by reference supplemental material on the docket. In that regard, plaintiff's request is **GRANTED**, and the Court will take proper evidentiary view of the materials.

[3] UCC section 2-207(3) (Cal. Com. Code section 2207(3)) provides:

> Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

5

*Growers, Inc. v. Krack Corp.*, 794 F.2d 1440 (9th Cir. 1986) is factually distinguishable because it involved purchase order and acknowledgement forms exchanged between parties, the latter of which contained a liability disclaimer which was *absent* from the former. Unlike the parties here, the parties in *Diamond Fruit Growers* had not entered into an underlying master supply agreement which governed the disclaimer of liability at issue in that case. Similarly, in *REIS Robotics (China) Co., Ltd. v. Miasole, Inc.*, No. 15-cv-06112-HRL, 2017 WL 1196834 (N.D. Cal. Mar. 31, 2017), while the court granted the defendants' motion to compel arbitration on the basis of an arbitration provision contained in a purchase order, that case is distinguishable because "the arbitration provision [did] not conflict with any terms or provisions of the [Master Supply Agreement]." *Id*. at *4. Accordingly, the Court finds the Conditions of Purchase contained in the POs do not supersede the Arbitration Provision contained in the Supply Agreement.

Plaintiff's argument in the alternative that "the terms of Monster's PO constitute modifications to the Agreement" similarly does not persuade. (Opp. to Motion to Compel Arbitration at 5.) Not only does plaintiff provide no legal support for this contention, but the language of the Supply Agreement undermines this argument. Paragraph 15.9 ("Modifications and Amendments"), which plaintiff fails to address, provides that "[a]ny modifications of, or amendments to, this Agreement shall be invalid, *unless made in writing and signed by duly authorized officers of both parties*." (emphasis supplied.) Thus, even if Monster intended to modify the Arbitration Provision through the POs' Conditions of Purchase, it could not have done so absent a writing singed by duly authorized officers of both parties. Plaintiff's argument in this regard fails because the POs are not signed. (*See, e.g.*, POs at ECF pp. 1–3.) Accordingly, the Court finds Monster did not modify the terms of the Supply Agreement with the subsequent terms of the POs.

### 2. *Scope of Arbitration Provision*

With respect to the second factor for deciding whether a dispute is arbitrable, the parties do not dispute that the scope of the Arbitration Provision in the Supply Agreement encompasses the claims at issue. Accordingly, the Court **GRANTS** Monster's Motion to Compel Arbitration and

**STAYS** the litigation pending completion of arbitration except as set forth herein.[4] More specifically, for the reasons set forth below, the stay does not apply to any request for equitable relief. (*See* Supply Agreement ¶ 16.5.)

### III. PLAINTIFF'S ATTACHMENT MOTION

The parties' principal disagreement regarding plaintiff's Attachment Motion concerns the propriety of bringing the motion before this Court. Indeed, Monster does not address plaintiff's arguments regarding the requirements under California law for the issuance of a writ of attachment and argues instead that because the entirety of the action is subject to the Supply Agreement's Arbitration Provision, "it is axiomatic that Plaintiff's Motion, and frankly the Complaint, are not properly before this Court." (Dkt. No. 25 at 4.) Plaintiff's position is that the Court is entitled to rule on plaintiff's Attachment Motion regardless of the Supply Agreement's Arbitration Provision.

#### A. Legal Standard

Federal Rule of Civil Procedure 64 provides in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. . . . The remedies available under this rule include . . . attachment.

Thus, Rule 64 effectively incorporates state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered. *See Granny Goose Foods Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974).

Attachment is a remedy "by which a plaintiff with a contractual claim to money (not a claim to a specific item of property) may have various items of a defendant's property seized before judgment and held by a levying officer for execution after judgment." *Waffer Int'l Corp. v. Khorsandi*, 69 Cal. App. 4th 1261, 1271 (1999) (emphasis omitted). It is a "harsh remedy because

---

[4] Plaintiff argues that the parties "cannot even literally apply the arbitration provision that is contained in the agreement as the ['JAMS/ENDISPUTE' arbitration] program does not even exist anymore." (Opp. to Motion to Compel Arbitration at 6.) However, the fact that the current name of the program is "JAMS" and no longer "JAMS/ENDISPUTE" does not affect the analysis.

7

it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." *Martin v. Aboyan*, 148 Cal. App. 3d 826, 831 (1983). "Therefore, the requirements for the issuance of a writ of attachment are strictly construed against the applicant." *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010). An applicant must establish each element of the writ of attachment inquiry by a preponderance of the evidence. *Id*.

California Code of Civil Procedure ("CCP") section 483.010(a) provides:

> Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorney's fees.

CCP section 484.090(a) provides:

> (a) At the hearing, the court shall consider the showing made by the parties appearing and shall issue a right to attach order, which shall state the amount to be secured by the attachment determined by the court . . . , if it finds all of the following:
>
> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Though not addressed by plaintiff, the Court's ruling granting Monster's Motion to Compel Arbitration brings into play CCP section 1281.8(b), which allows a court to impose a remedy such as a writ of attachment "only upon the ground that the award to which the applicant may be entitled [in the arbitration] may be rendered ineffectual without provisional relief."

**B. Analysis**

The Court agrees with plaintiff that the requirements of CCP section 484.090(a) have been satisfied and generally would find in plaintiff's favor. (*See* Dkt. No. 22 at 6–7.) However,

8

plaintiff has failed to address the additional requirements of CCP section 1281.8(b).

"The logical reason for the requirement that an applicant be required to show that an arbitration award may be rendered ineffectual is to ensure that the court does not invade the province of the arbitrator—i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award may not be adequate to make the aggrieved party whole." *Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 1527 (1991). The apparent insolvency of a party or "inability to otherwise pay damages are appropriate measures of irreparable harm that might render an arbitration award ineffectual." *Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Grp.*, 193 Cal. App. 4th 849, 858 (2011). That finding is in addition to the "statutory or common law requirements that pertain to the provisional remedy . . . ." *Id.* at 856.

A court's authority to "issue equitable relief in aid of arbitration" is well established. *Toyo Tire Holdings of Americas, Inc. v. Continental Tire North Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010). Such "judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process." *Id.* California courts have held that "the standards for irreparable harm set forth in [CCP] section 485.010 provide *guidance* to the trial courts on the issue of ineffectual relief under section 1281.8." *Cal. Retail*, 193 Cal. App. 4th at 859 (emphasis in original).

CCP section 485.010 in turn provides in relevant part:

(a) Except as otherwise provided by statute, no right to attach order or writ of attachment may be issued pursuant to this chapter unless it appears from facts shown by affidavit that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

(b) The requirement of subdivision (a) is satisfied if any of the following are shown:

(1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.

(2) Under the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as

9

those debts become due, unless the debts are subject to a bona fide dispute. Plaintiff's affidavit filed in support of the ex parte attachment shall state, in addition to the requirements of Section 485.530, the known undisputed debts of the defendant, that the debts are not subject to bona fide dispute, and the basis for plaintiff's determination that the defendant's debts are undisputed.

. . .

(5) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

As *Cal. Retail* explained, "[b]oth the legislative history of section 1281.8, as well as the terms of the statute itself, support the notion . . . that the apparent insolvency of a party to an arbitration agreement, or other evidence showing that the party was experiencing severe financial difficulties, is sufficient to satisfy the ineffectual relief requirement." *Cal. Retail*, 193 Cal. App. 4th at 587.

Here, plaintiff did not present evidence at the time it filed its Attachment Motion to support the claim that, absent an attachment, the relief that it may obtain through arbitration will be without effect. "Such a showing must focus on the financial position of the non-moving party. Thus, [p]laintiff must establish that [Monster's] financial condition is such that it is likely that it will not have the ability to pay an adverse judgment if one is obtained through arbitration proceedings." *Interpro Mfg., Ltd. v. Pac. Shore Holdings, Inc.*, No. LA CV13-07540 JAK (MANx), 2014 WL 12696466, at *5 (C.D. Cal. May 23, 2014); *see also Subsea Robotics, LP v. Schilling Robotics, LLC*, No. 2:13-cv-01833-MCE-EFB, 2013 WL 6503344, at *2 (E.D. Cal. Dec. 11, 2013) ("California courts have held that the ineffectual-relief requirement is similar to irreparable harm as these terms are used in the injunction context. . . . Accordingly, the ineffectual-relief requirement may be met if the petitioner shows there is a danger the respondent is insolvent.") (internal quotation marks and citation omitted).

Thus, plaintiff's Attachment Motion is **DENIED WITHOUT PREJUDICE**.[5]

---

[5] In addition, the Court **TENTATIVELY DENIES** plaintiff's Sealing Motion. The Court will afford Monster until **September 28, 2018** to file its declaration in accordance with Civil Local Rule ("Local Rule") 79-5(e)(1). If Monster fails to comply, plaintiff's Sealing Motion will be denied and the document shall be filed on the public docket. *See* L.R. 79-5(e)(2).

10

## IV. SRFK's Withdrawal Motion

SRFK's Withdrawal Motion is based on Monster's failure to pay its attorney's fees, a breakdown of the attorney-client relationship, and Monster's failure to retain local counsel in connection with this matter. (Withdrawal Motion at 3–6.) For good cause shown, the Court **GRANTS** defense counsel's Withdrawal Motion after compliance with the instructions below.[6]

## V. CONCLUSION

For the foregoing reasons, the case is **STAYED** pending completion of arbitration, except that plaintiff may file a renewed Attachment Motion within **14 days** from the date of this Order. Monster's response thereto is due **28 days** from the date of this Order. At that time, Monster must be represented by counsel. Failure to retain counsel or respond to any renewed Attachment Motion may result in the grant of such a motion and/or striking of Monster's Amended Answer to the complaint.

SRFK shall forthwith (i) serve this Order on Monster, (ii) file proof thereof on the docket, and (iii) file the Amended Answer on the docket. In addition, SRFK shall promptly release to Monster, at Monster's request, all of Monster's papers and property, and any other item reasonably necessary for its representation in this matter, regardless of whether Monster has paid for such documents or not.

Monster shall have until **September 28, 2018** to file a notice of appearance of counsel to represent it.[7]

This Order terminates Docket Numbers 20, 27, 37 and 39.

**IT IS SO ORDERED.**

Dated: September 6, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[6] Accordingly, defense counsel's Motion for Continuance, which seeks an order continuing the hearing currently set for September 11, 2018 or alternatively permitting SRFK to appear telephonically at the same, is **DENIED AS MOOT**.

[7] The Court notes that Monster has been on notice of SRFK's Withdrawal Motion since at least August 21, 2018. (*See* Dkt. No. 37-1 ¶ 12.)

11